(Decided 17th December, 1880.)

THE MUTUAL LIFE INSURANCE COMPANY OF BALTI-MONE *vs.* MARY A. BRATT, by her next friend, JOSHUA OWINGS.

*Construction of a Policy of Life Insurance—Evidence.*

A non-forfeitable policy of life insurance issued by the appellant to the appellee in the amount of $2000, for the term of the life of the assured, among other conditions contained the following: "If the said premiums shall not be paid on or before the days above mentioned for the payment thereof, at the office of the company in the City of Baltimore, (unless otherwise expressly agreed in writing,) or to agents when they produce receipts signed by the president or secretary, then in every such case, the said company shall not be liable for the payment of the whole sum assured, but only for an amount proportionate to the number of premiums paid."

In an action by the appellee to recover the amount of the insurance, among other things, the death of the assured was proved, and that prior to his decease, twenty-seven quarterly premiums had been regularly paid from the date of the policy, and that thereafter default was made, and no other quarterly premiums had been paid; and that four other quarterly premiums had after said default became due, and were unpaid at the decease of the assured. HELD:

That the plaintiff was entitled to recover twenty-seven thirty-one parts of $2000, with interest in the discretion of the Court on the amount so ascertained from the date of the institution of the suit.

Mut. Life Ins. Co. *vs.* Bratt.

The charter and by-laws of the company and a table referred to in the application for insurance were admissible in evidence in this case, but not the portion of a volume entitled The Principles and Practice of Life Insurance, containing rules and modes of calculating and adjusting life insurances; nor the opinions of experts.

APPEAL from the Circuit Court for Howard County, on removal from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—At the trial of the case before the Court without a jury, the plaintiff offered four prayers, and the defendant, two. The substance of these prayers with their modifications is stated in the opinion, and also the instruction given by the Court below (MILLER and HAMMOND, J.) in lieu of the plaintiff's first prayer. On the rejection by the Court of the defendant's prayers, he excepted, and the finding of the Court and judgment thereon being in favor of the plaintiff for $1819.15, with interest and costs, the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and IRVING, J.

*William M. Merrick,* for the appellant.

The Court erred in rejecting the tables and printed rules of the company, printed and circulated prior to issuing this policy, because the company, being a mutual company, the insured was a party to those printed rules and regulations and declarations, as to the meaning and mode of computing payments upon policies, and the same were to be taken as if incorporated with the policy itself, and as guides to its meaning and interpretation. These are not oral evidence offered to explain, alter or vary a written contract; but existing writings, to which

the parties to the contract refer and adopt as parcels of the contract itself, so far as applicable thereto. (See *Bliss on Insur.*, sec. 426, *pp.* 766, 767, and authorities in notes thereto; 34 *Md.*, 553, and *Taylor on Evid.*, sec. 1082.)

The evidence of the expert was merely a statement of those extrinsic facts and scientific principles to which the subject-matter of the contract related, and an acquaintance with which was essential to the proper understanding of the terms used in the contract. (See *Taylor on Evid.*, sec. 1058, 1060 to 1065, and 1082.)

But after all, the question remains, what is the meaning of the expression, "the company shall not be liable for the payment of the whole sum assured, but only for an amount proportionate to the number of premiums paid?"

Now, if we take the natural sense of the words, and do not by intendment supply anything which has been omitted by accident, ignorance or inadvertence, the expression here, since there were twenty-seven quarterly payments, is the same as saying the company shall be liable to a part of the sum insured, proportioned to twenty-seven. This is a manifest ambiguity, or to speak more correctly, is an expression having no meaning at all. Whether considered as a patent ambiguity, or a totally insensible expression, the same result must follow, that the plaintiff cannot recover.

We are necessarily driven to conjecture what was the meaning of the parties, for they have not expressed any in words, nor by any legitimate deductions from the words themselves, apart from the unexpressed principles and rules and motives of both contracting parties, which enter into every policy of life insurance.

The question then is, shall we resort to conjecture, or shall we interpret this contract according to the rules of equity, which this company has written, printed and promulgated, and to which the assured is a party, being by

the terms of the charter, section third, a member of the company, and a participant in its benefits and gains?

By turning to table No. 1 of this company, and its general rule, the Court will see that there is a standard of valuation assigned to every policy, as non-forfeitable, after payment of the annual premiums, and this standard is still more sharply defined in the printed regulations for computing values on default, when the whole policy is to be paid up within a definite number of years. The testimony of the expert, as to the proper mode of computing the valuation under the claim in question, corresponds with those rules, and makes a basis of calculation accordant with the theory of the defendant's second prayer, which the Court rejected.

Again, if we leave out of view those special rules, and interpret the expressions in the policy by the standard of the principles regulating general life insurance, and by the rules adopted for ascertaining the value of policies, when accidents, or contingencies unprovided for, call for an equitable valuation, we reach the rule and mode of valuation expressed in the defendant's first prayer, and which is based upon the doctrines of life insurance as explained by the expert, Hall, the actuary.

This principle of calculation accords with the doctrines announced by the Supreme Court of the United States, in 92 *Otto*, 24 to 35, and by the English Courts in *Bell's Case*, 9 *Law Reports, Equity Div.*, 706, and *Holdick's Case*, 14 *Law Rep., Equity Div.*, 72.

Another mode of computation which may be presumed to have been in the contemplation of the parties, is derived from the table of the expectation of life, table 14 of this company. The age of the insured being sixty-one, the expectation of his life was thirteen and a half years He reasonably calculated to pay premiums for thirteen and a half years, then the proportion which he actually paid, seven, to the number contemplated, thirteen and a half,

may well be taken in analogy to the rule expressed in defendant's second prayer, and to the rule in all policies for fixed terms of years, as the true proportion for which the company should be liable upon death after default, viz., 7-13½ of the sum insured.

It is a well ascertained principle in life insurance, that a policy-holder is expected to confer a benefit by his contributions, and if he suffers the payments to lapse, he inflicts upon the company an injury equal to the present value at the term of breach of the future profits which the company might reasonably anticipate from his continued payments. Hence, as the injury is inflicted upon the company at the date of the first breach, the measure of their injury should be the correlative measure of the price or proportion to be paid to him upon the hypothesis of non-forfeiture, in other words, the surrender value of the policy.

If it be alleged that there is no evidence, or that the testimony of the expert, or the passage from the work on insurance, verified by him and read to the Court, are not to be accepted as legal evidence; nevertheless, those are matters of which the Court can and ought to take judicial notice, and the Court may rightfully call in aid those sources of instruction in aid of its own knowledge. It may be well to advert also to the non-forfeiture law of Massachusetts, which is explained and quoted in *Bliss, sec.* 203, for the purpose of ascertaining that great underlying rule of equity, between the insurer and insured, which must be taken into account in interpreting the clauses of the policy now before the Court. For it is too clear for controversy, that the words of the policy, unaided by extrinsic circumstances, are not expressive of any exact meeting between the minds of the contracting parties, and the question, therefore recurs, what rule of interpretation will best effectuate justice between the parties?

*Samuel Snowden*, for the appellee.

The construction of policies of insurance is to be governed by the same principles as are applied in the construction of other contracts. *National Insurance Company vs. Crane*, 16 *Md.*, 260; 7 *U. S. Digest*, (*1st Series*,) *p*. 638, *sec*. 72; 4 *Wait's Actions and Defences*, 106.

They are to be construed liberally in favor of the insured. *Rolker vs. Great Western Insurance Company*, 4 *Abb. App. Dec.*, 76; *Wells vs. Pacific Insurance Company*, 44 *Cal.*, 39; *Com. Ins. Co. vs. Robinson*, 64 *Ill.*, 265.

And in case of ambiguity, the language must be considered that of the company, and construed most strongly against it. Conditions of forfeiture receive a strict construction against the company for whose benefit they are introduced. *Symonds vs. North W. M. L. I. Co.*, 6 *Ins. Laws Jour.*, 648, *sec.* 149.

And the policy must be taken as expressing the final agreement of the parties, and as merging all previous verbal stipulations. *Insurance Company vs. Mowry*, 96 *U. S.* (6 *Otto.*)

Applying these well settled rules to the construction of this policy, it is susceptible of a reasonable construction upon its face, without resorting to extrinsic evidence. The insurance was to continue *"for the natural life of Henry Bell;"* and if the quarterly premiums were paid by him up to the time of his death, then the company agreed to pay to the plaintiff the sum of $2000, but in case he failed to pay the premiums, then the company provided *"that it should not be liable for the payment of the whole sum insured, but only for an amount proportionate to the number of premiums paid."* This language is restrictive, limiting the liability, but implying liability within the limitation imposed, according to the rule laid down by the Supreme Court of Maine, in construing a similar provision. *Dorr vs. Phœnix Life Insurance Company*, 67 *Maine*, 438.

As soon as Bell made default in the payment of the premiums, the policy became an insurance upon his life, for such an amount as might be ascertained at his death to be proportionate to the number of premiums paid by him. As, therefore, he paid twenty-seven quarterly premiums, and lived until after thirty-one quarterly payments became due, the company became bound to pay so much of the sum assured as the number of premiums paid by Bell, up to the time when he ceased to pay the premiums as they became due, would bear to the number of premiums which fell due up to the time of his death. The death of Bell fixed the time when the payment of such proportion of the amount assured became due to the plaintiff.

The rule, embodied in the instruction given by the Court, is in accordance with this construction of the policy—which being expressed in language neither technical nor ambiguous, no parol evidence could be admitted to determine the intention of the parties. *Hough vs. Peoples' Fire Insurance Company*, 36 *Md.*, 398; *Partridge vs. Insurance Company*, 15 *Wall.*, 573.

The testimony of the actuary was directly in conflict with the provisions of the policy. Instead of giving to the policy a construction in accordance with its terms, it incorporated therein another and a different contract from that made by the parties. Nothing is said in the policy about the payment of the equitable value of the policy, as calculated by an actuary, upon the theory that a man *ought* to live to be ninety-five years of age, but the insurance is for the term of Bell's life. It was the happening of that event which fixed the other proportion.

The book entitled "Principles of Life Insurance" was not admissible in evidence. It consists of the various theories and calculations of an actuary of life insurance companies, and does not contain any evidence of facts pertinent to the issues in this case.

The charter and by-laws were admitted by the Court, but the pamphlet entitled "Mutual Life Insurance Company" was rejected, except Table No. 1 therein contained. This book contains only rules for the instruction of agents, and the different plans upon which the company would insure. The members are only bound by the charter and by-laws, and not by any such rules. *Bliss on Life Insur., sec.* 426.

Bowie, J., delivered the opinion of the Court.

The question involved in this appeal is the proper construction of a policy of Life Insurance, issued by the appellant to the appellee, in the amount of two thousand dollars for the term of the natural life of the assured.

The policy among other conditions and agreements contained the following, viz.,

2nd. "If the said premiums shall not be paid on or before the days above mentioned, for the payment thereof, at the office of the company in the City of Baltimore, (unless otherwise expressly agreed in writing,) or to agents when they produce receipts signed by the President or Secretary, then in every such case the said company shall not be liable for the payment of the whole sum assured, but only for an amount proportionate to the number of premiums paid."

At the trial before the Court upon submission without a jury, the plaintiff, to sustain the issues on his part offered in evidence the charter of the defendant, the policy of insurance and application for insurance thereto annexed upon the life of Henry Bell, and proved the death of said Bell on the third of July, 1878, and that due proof and notice of the same was given to the defendant more than ninety days before the suit was brought; the plaintiff also proved that prior to the decease of said Bell, twenty-seven quarterly premiums had been regularly paid from the date of the policy, and that, thereafter, default was made, and

no other quarterly premiums had been paid, and four other quarterly premiums had after said default become due and were unpaid at the decease of the assured.

The defendant then offered in evidence, subject to exception, certain printed pages of a volume entitled "The Principles and Practice of Life Insurance," also a printed pamphlet entitled "The Charter and By-Laws of the Mutual Life Insurance Company of Baltimore," and proved that the same had been printed and circulated prior to the application for said policy by the authority of the Company.

They also offered to prove by the actuary of the company, that he was for many years conversant as an actuary with the business and practice of life insurance, and thoroughly acquainted with the principles, rules and modes of calculating and adjusting life insurances, and that said volume entitled "The Principles and Practice of Life Insurance," is a standard work of recognized authority in the business of life insurance, and the exposition of said rules and principles as read by the defendant from said volume, are recognized and accepted in the business of life insurance as authoritative and correct.

The defendant further proved by the actuary, that condition numbered "2nd," as printed in the body of said policy, which regulates the mode of payment by the company in case default shall have been made in the payment of premiums, is the regular and appropriate formula used in the cases of policies, where the whole premium on an insurance for life is provided to be paid up within a definite number of years upon the non-forfeitable plan, and that in such cases, under that clause or formula, the mode of payment would be to pay to the party entitled such a proportion of the sum insured, as the number of premiums actually paid would bear to the whole number of premiums contemplated by the policy; for example, in a policy for life to be paid up in ten annual premiums, and default

made after the seventh, the proportion would be seventh-tenths of the amount insured, and so in similar cases.

Testimony was further offered to show, that certain tables known as Expectation Tables are never used in the business of insurance, and that in ordinary life insurance the computation upon which all insurance is made and all premiums are calculated is, upon the probability of a life enduring to the utmost limit of human life, viz., to ninety-five years; that as an expert he would under the aforesaid condition of the policy calculate the sum to be paid the plaintiff by the ratio of the number of premiums paid, to the number which might have been paid in case the assured had survived to the age of ninety-five, and which, the age of the assured being given in the policy, would be the proportion which twenty-seven, the premiums actually paid, bears to one hundred and forty, the possible number, comparing the age of the insured to the limit of human life. The defendant also proved by said witness that the equitable value of this policy at the time of the default made in paying its premiums, according to the known and recognized rule for computing such value would be $429.23, and thereupon the defendant rested.

The plaintiff then offered a series of prayers construing the policy, and defining the proportion of the whole sum assured, which the plaintiff was entitled to recover; and excluding the evidence offered by the defendant to govern that construction.

The defendant submitted two prayers maintaining his theory, founded upon the principles laid down in the books offered by him in evidence, and the testimony of the actuary.

The Court below, in lieu of the plaintiff's first prayer, substituted a ruling of its own; granted the plaintiff's second prayer, excluding the book called Principles of Life Insurance, and the parts read therefrom by the defendant, as evidence in the cause, and granted the

plaintiff's third prayer with a modification. The defendant's prayers, affirming, first, that the plaintiff was only entitled to recover the equitable value of the policy at the time of the payment of the last premium; 2ndly. That the proportion of the amount of insurance payable to the plaintiff, is that proportion which the number of premiums paid bears to the whole number of premiums contemplated by the policy at the time it was entered into, and that said whole number of premiums is to be considered with reference to the possible duration of life extending to ninety-five years, etc., were rejected. The defendant appealed from each and every of said rulings in favor of the plaintiff, and against the appellant.

The instruction or ruling granted by the Court, in lieu of the plaintiff's first prayer, is as follows:

"It being admitted that thirty-one quarterly payments of premiums had accrued at the death of Henry Bell, whose life was insured by the policy offered in evidence, and that twenty-seven of them only had been duly paid by the assured, the Court rules, that according to the true construction of the policy sued on, the plaintiff is entitled to recover $\frac{27}{31}$ parts of $2000, the sum for which the life of Bell was insured, with interest, in the discretion of the Court, on the amount so ascertained from the date of the institution of this suit."

The adoption of this ruling by the Court as its guide in construing the policy, and ascertaining the amount to which the plaintiff is entitled, was virtually a negation of all the defendant's theories, and of the evidence upon which he based them. There can, we think, be no doubt of the correctness of the action of the Court below in its several rulings.

The policy sued on, was issued by a Mutual Life Insurance Company, upon what is called the non-forfeitable principle.

"The fact that the policy is a contract between a mutual company and one of its members, does not modify the

construction to be given to its terms. The relations of the parties are always to be considered in seeking the true interpretation of their language. But their words used for a definite purpose, and applied to a transaction of well understood character, must be held to convey the meaning and force which is ordinarily applied to them." *Bliss on Life Ins.*, 656, 657.

The second condition of the policy, provided that in cases of default of payment of premiums, " then in every such case, the said company shall not be liable for the payment of the whole sum assured, but only for an amount proportionate to the number of premiums paid."

The insurance was to continue for the natural life of the assured. The whole sum assured, was $2000 ; twenty-seven quarterly payments had been made, and four were overdue. If all the quarterly payments had been paid, there could be no question or doubt about the right to recover the whole amount insured, but a part only being paid, equity and justice, as well as the language of the contract dictated, a *pro rata* amount.

It is the very essence of a non-forfeitable policy, that the insurers should pay in proportion to the premiums received, as prescribed by the conditions.

The appellant contends, the Court erred in rejecting the tables and printed rules of the company, printed and circulated prior to issuing this policy, because the company being a mutual company, the insured was a party to those printed rules and declarations as to the meaning and mode of computing payments upon policies, and that the same were to be taken as if incorporated in the policy itself, and as guides to its meaning and interpretation. The Court below excluded such as they deemed foreign to the contract, but admitted the charter and by-laws, and table No. 1, being the table referred to in the application for insurance. The assured becoming a member of the company, by the act of insurance, was bound by those,

but not by the other publications, or the speculative theories of writers on insurance, or the opinions of experts. *Bliss on Ins.*, *ch.* 16, *sec.* 427.

There was no evidence that the printed matter excluded, had been practically adopted by the defendant, in the course of its business transactions. There was no proof of a custom or usage to settle the claims of policy holders in such cases, upon the basis of the equitable value of the policy, or upon the theory that the proportion of the assured was to be ascertained by the ratio of the number of the premiums paid, to the number which might have been paid had the assured survived to the extreme limit of human life, or that the assured had accepted the policy upon such conditions.

The Court below admitted all the documents which tended to show the meaning of the contract, and the rights and obligations of the company and the assured. Notwithstanding the learned and ingenious argument for the appellant, it seems to us, the cases cited by the appellant do not apply to or control a case like the present.

The contract in this instance is susceptible of a reasonable and equitable interpretation, without the aid of extraneous instruments or expert testimony. If it was ambiguous, as contended by the appellant, that construction must be adopted, which is most favorable to the promisee. *Bliss on Ins.*, *p.* 656, *sec.* 385.

Finding no error in the rulings of the Court below, the same will be affirmed.

*Judgment affirmed.*

(Decided 17th December, 1880.)